UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CASE NO. _____
*Electronically Filed*

RONALD BURNS                                                                                       PLAINTIFF

v.                                    **COMPLAINT AND JURY DEMAND**

BERRY GLOBAL, INC.
    Serve:  Registered Agent
             Corporation Service Company
             421 West Main Street
             Frankfort, Kentucky 40601                                      DEFENDANT

---

COMES NOW the Plaintiff, Ronald Burns, by and through counsel, and for his claims and causes of action against the Defendant herein, states as follows:

**PARTIES**

1. Plaintiff, Ronald Burns (hereinafter "Plaintiff"), is and was at all times relevant herein, a resident of Lexington, Fayette County, Kentucky.

2. Upon information and belief, Defendant, Berry Global, Inc. (hereinafter "Defendant"), is a for profit foreign corporation doing business in the Commonwealth of Kentucky. Defendant's principal place of business is located at 101 Oakley Street, Evansville, Indiana, 47706. Defendant's registered agent for service of process is Corporation Service Company, 421 West Main Street, Frankfort, Kentucky, 40601.

3. Upon information and belief, Defendant owns, operates and/or maintains, and at all relevant times did own, operate and/or maintain a factory in which Plaintiff worked, located at 101 Etter Drive, Nicholasville, Kentucky, 40356.

4. Upon information and belief, Defendant is an employer under Title VII and employs in excess of fifteen (15) employees.

## JURISDICATION AND VENUE

5. This Court has personal jurisdiction over the Defendant because Plaintiff's claims arise out of the Defendant's tortious acts within the state of Kentucky that caused injury and damages to Plaintiff within the state of Kentucky.

6. The amount in controversy exceeds $75,000, exclusive of interest and costs. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 and 1343 and 42 U.S.C. § 2000e(5), this being a proceeding to enforce rights and remedies secured under Title VII of the Civil Rights Act of 1964 and 1991, as amended, 42 U.S.C. 2000e *et. seq*. This court also has pendent and supplementary jurisdiction over so much of this action as is based on state law.

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(a) because there is complete diversity of citizenship between the Plaintiff and the Defendant, and the amount in controversy exceeds $75,000.00.

8. Venue is proper within this District pursuant to 28 U.S.C. §1391(b) because a substantial part of the events giving rise to this Complaint occurred in this District and this is where the Defendant does business and may be found.

## CONDITIONS PRECEDENT

9. Plaintiff has exhausted all administrative remedies and conditions precedent, including timeliness, deferral and all other jurisdictional requirements necessary for the maintenance of the foregoing action, all of which are more fully described below:

   a. Plaintiff filed a Charge of Discrimination alleging race discrimination, hostile work environment and constructive discharge with the Equal Employment Opportunity Commission ("EEOC").

  b. On November 7, 2019, Plaintiff was issued a Notice of Right to Sue from the EEOC.

  c. Plaintiff has timely filed the foregoing action within ninety (90) days of the date on which he received the Notice of Right to Sue described in paragraph (b) above.

## STATEMENT OF CLAIM

10. Plaintiff was hired as a temporary employee at Berry on or about January 22, 2018.

11. On August 6, 2018, Plaintiff was hired by Defendant in a full-time capacity as a "Maintenance Technician."

12. In this position, Plaintiff was required to fix high voltage equipment on the factory floor.

13. After working his shift on August 7, 2018, Plaintiff returned to his locker and found a cardboard note that said "Dance Monkey." (**Exhibit A**).

14. Plaintiff immediately reported this note to his supervisors.

15. When Plaintiff asked about video footage potentially revealing the identity of the person who placed this note in his locker, an agent of Defendant told Plaintiff that the video feed was only a "live stream" and that nothing was preserved.

16. Defendant failed to undertake a proper investigation after the discovery of this first note.

17. When Plaintiff next worked on August 11, 2018, after working his shift, Plaintiff returned to his locker and found a noose hanging from it. (**Exhibit B**).

18. After discovering the noose, Plaintiff took a photograph of the noose and immediately contacted his supervisor to report the incident.

19. After the noose was discovered, an employee of Defendant admitted to Plaintiff that surveillance footage wasn't limited to a "live feed" and that Defendant was in the process of reviewing the footage.

20. On August 11, 2018, Plaintiff sent a text message to Jamie Long (hereinafter "Long"), Defendant's onsite Human Resources representative, requesting that she provide him with a photograph of the first note and that she supply Plaintiff with Berry's ethics hotline number.

21. Long didn't provide Plaintiff with the requested photograph note until August 25, 2018.

22. Plaintiff filed a formal complaint with Defendant's ethics hotline on August 11, 2018.

23. Upset by these threats, Plaintiff feared for his life and requested that Defendant provide him with counseling, but these requests were ignored.

24. Defendant failed to conduct a proper investigation after the noose was discovered on August 11, 2018 and never interviewed or even attempted to discuss either incident with Plaintiff.

25. On or about August 17, 2018, Plaintiff received an email from Defendant which stated as follows: "The investigation of this matter has been completed and appropriate action has been taken.  Due to the confidential nature of any investigation, findings must remain confidential and cannot be shared.  Thank you for filing your report."

26. On August 24, 2018, Plaintiff returned to his locker and discovered a second cardboard note, which said "Die Nigger."  (**Exhibit C**).

27. Despite instituting a new protocol requiring the production supervisor to periodically inspect each locker, when Plaintiff asked if this had been done prior to the discovery

of this second note, the production supervisor admitted that he had not complied with the new protocol because he was "too busy."

28. Plaintiff called the police and filed a criminal complaint after discovering this second note.

29. Defendant didn't conduct a proper investigation after the discovery of this second note, nor did anyone affiliated with Defendant interview Plaintiff.

30. Although Defendant identified an individual who it thought might be responsible for these incidents, Defendant employees intentionally exposed Plaintiff to potential bodily injury when they informed this individual that he was being suspended and then allowed him to be in proximity to Plaintiff.

31. Plaintiff was subsequently advised that Defendant didn't have enough evidence to terminate the suspended employee and that he would be returning to work.

32. After these three threats on his life, Plaintiff never again felt safe working at Berry.

33. Defendant never took any precautions to protect the safety of Plaintiff while he was working.

34. Defendant wrongfully threatened to suspend Plaintiff for possessing an expired driver's license, which isn't a requirement for his position.

35. On November 9, 2018, a homophobic and derogatory cardboard note that said "Carl Loves Big Dick" was discovered on an employee's computer monitor.

36. Although Defendant terminated a person in regards to this incident, Defendant again failed to conduct any sensitivity training.

37. On January 14, 2019, Plaintiff discovered a second noose, but this one was left on top of his workstation in a tightened vice.   (**Exhibit D**)

38. Plaintiff reported this incident to his supervisors but was told by Long that this was most likely a coincidence and that the result of the investigation was inconclusive.

39. As a result of Defendant's failure to properly investigate any of these incidents, Plaintiff was forced to find another job, albeit for less money and inferior benefits.

40. At no point after any of these incidents did Defendant initiate any discrimination/sensitivity/terroristic threatening training.

41. As a direct and proximate result of Defendant's repeated failure to protect the safety of its employees, including Plaintiff, to perform a reasonable investigation which included an interview of Plaintiff and upon demonstrating a complete failure to control or prevent subsequent personal threats and harassment directed toward Plaintiff, Plaintiff has suffered and will continue to suffer substantial and permanent injuries, losses and damages, including but not limited to pain and suffering, mental anguish, emotional distress and economic losses.

## CAUSES OF ACTION

### COUNT I.   RACIAL DISCRIMINATION AND HOSTILE WORK ENVIRONMENT

42. Plaintiff incorporates by reference all previous and subsequent paragraphs of this Complaint as if fully set forth herein and further alleges as follows:

43. Each and every allegation contained in the preceding paragraphs is reiterated as if set forth verbatim herein.

44. Plaintiff is a member of a protected group on the basis of his race. Plaintiff was discriminated against based on his race in violation of 42 U.S.C. §1981 and Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. Sec. 2000e) et seq.), the Kentucky Human Rights Act and the United States Equal Employment Opportunity Act.

45. Plaintiff asserts that the unwanted treatment, harassment and retaliation were a mere pretext for the discrimination against Plaintiff based on his race.

46. In failing to protect Plaintiff from racial discrimination or retaliation, Defendant acted with malice or reckless indifference to the federally protected rights set out under 42 U.S.C. Sec. 1981 and Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. Sec. 2000e et seq.), the Kentucky Human Rights Act and the United States Equal Employment Opportunity Act.

47. The Defendant violated 42 U.S.C. Sec. 1981 and Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. Sec. 2000e et seq.), the Kentucky Civil Rights Act and the United States Equal Employment Opportunity Act by allowing the racial discrimination and retaliation to exist in the workplace.

48. The Defendant's wrongful actions as set forth constituted a hostile work environment for the Plaintiff. Defendant violated 42 U.S.C. §1981 and Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. §2000e et seq.) by allowing a hostile work environment to exist regarding racial discrimination in the workplace.

49. That the aforesaid conduct of Defendant, its agents and servants, violates Kentucky and United States laws against retaliatory discharge and was, in fact, retaliatory in nature and in violation of Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. §2000e et seq.) and constitutes racial discrimination under 42 U.S.C. §1981.

50. Plaintiff's race was a determining fact in the disparate treatment of Plaintiff.

51. Defendant's employment discrimination of Plaintiff was caused, continues to cause, and will cause Plaintiff to suffer substantial damages for pecuniary losses, embarrassment, humiliation, pain and suffering, mental anguish, loss of enjoyment of life and other nonpecuniary losses.

52. Defendant subjected Plaintiff to a workplace permeated with continuous, ongoing and concerted discriminatory intimidation, ridicule, insult and death threats, based on Plaintiff's race which was objectively and subjectively offensive and sufficiently served to alter the conditions of Plaintiff's employment and created an abusive and dangerous work environment.

53. Plaintiff is entitled to injunctive relief and/or civil damages from Defendant as a result of the employment discrimination as alleged above.

54. Due to the acts of Defendant, its agents and employees, Plaintiff is entitled to injunctive relief and/or civil damages, back wages, plus interest, and payment for lost benefits.

**COUNT II.   RETALIATION**

55. Plaintiff adopts and incorporates herein by reference each and every preceding paragraph of this Complaint as though set forth fully herein.

56. After the Plaintiff sought relief from Defendant's discriminatory practices, to include, but not limited to consulting with upper management through the chain of command, Defendant retaliated against Plaintiff by a continuance of harassment.

57. Due to the acts of the Defendant, its agents and employees, Plaintiff is entitled to injunctive relief and/or civil damages, back wages, plus interest, payment for lost wages and punitive damages.

58. Accordingly, Plaintiff is entitled to compensatory damages in the nature of the value of his lost wages and benefits, front pay, together with interest thereon, as well as liquidated damages and his reasonable attorney's fees for the bringing of this action.

59. Plaintiff engaged in activity protected by federal and state law by registering complaints to Defendant's management and supervisors about a racially hostile workplace environment, by filing criminal charges and by filing a complaint with the EEOC.

60. In response to the Plaintiff's complaints about the racially hostile workplace environment, Defendant retaliated against Plaintiff by taking adverse employment action against him, and also by erecting or allowing to be erected the noose as a form of intimidation.

61. Defendant further retaliated against Plaintiff in response to his complaints about disparate treatment based on race and about the racially hostile work environment.

62. As a direct and proximate result of Defendant's retaliation, Plaintiff has been injured by virtue of lost wages, lost benefits, lost advancement opportunities, loss of employment and income, humiliation and embarrassment, emotional distress and attorneys' fees, all in excess of the jurisdictional threshold of this Court.

63. Pursuant to KRS 344.450, Plaintiff is entitled to recover damages for his injuries, including, but not limited to damages for his lost wages, lost benefits, lost advancement opportunities, loss of employment and income, humiliation and embarrassment, emotional distress and attorneys' fees, all in excess of the jurisdictional threshold of this Court.

**COUNT III.   CONSTRUCTIVE DISCHARGE**

64. Plaintiff adopts and incorporates herein by reference each and every preceding paragraph of this Complaint as though set forth fully herein.

65. Plaintiff hereby adopts and incorporates the foregoing allegations set out herein pursuant to CR 10.03.

66. Based upon all of the above, and motivated substantially by concerns of additional retribution and retaliation, Plaintiff resigned his employment at Berry.

67. But for the aforementioned acts, Plaintiff would have continued in his employment at Berry for a substantial period of time.

68. Based upon the aforementioned acts, any reasonable person in the same situation and position that Plaintiff was in would've felt compelled to resign.

69. As a result of all the aforementioned acts, Plaintiff was constructively discharged.

70. As a direct and proximate result of Plaintiff's constructive discharge, he has been injured by virtue of lost wages, lost benefits, lost advancement opportunities, loss of employment and income, humiliation and embarrassment, emotional distress and attorneys' fees, all in excess of the jurisdictional threshold of this Court.

### COUNT IV.   PUNITIVE DAMAGES

71. Plaintiff adopts and incorporates herein by reference each and every preceding paragraph of this Complaint as though set forth fully herein.

72. The conduct and/or inaction of the Defendant was so willful, wanton, and grossly negligent that Plaintiff is entitled to punitive damages.

73. The Defendant engaged in discrimination with malice or reckless indifference to the federally protected rights of the Plaintiff.

WHEREFORE, the Plaintiff, Ronald Burns, prays the Court:

1. For a trial of this case by jury;

2. For a judgment against the Defendant for Plaintiff's damages, which are in excess of any minimum dollar amount necessary to establish jurisdiction of this Court, and include the following elements:

    (a) Declaring the actions complained of herein illegal;

    (b) Actual damages;

    (c) Compensatory damages, including past and future medical expenses, past and future pain and suffering, lost wages, injury to character and reputation,

        injury to professional standing and permanent impairment;

(d)     Incidental damages;

(e)     Punitive damages;

(f)     Liquidated damages;

(g)     Pre-judgment and post-judgment interest;

(h)     Plaintiffs' costs herein expended including reasonable attorney's fees; and

(i)     All other relief to which the Plaintiff may appear entitled.

    Respectfully submitted,

    REINHARDT & ASSOCIATES, PLC

    /s/ Daniel C. Mack
    KATHERINE J. HORNBACK
    DANIEL C. MACK
    449 Lewis Hargett Circle, Suite 210
    Lexington, Kentucky   40503
    (859) 277-7100
    ATTORNEYS FOR PLAINTIFF

H:\CRAIG\Burns-Berry\Pleadings\Complaint.docx